UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| APRIL ROBLES, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CASE NO. 3:20-cv-001188-L |
| § | |
| EMINENT MEDICAL CENTER, LLC § | |
| AND EMINENT MEDICAL CENTER § | |
| OPERATING, LLC, § | |
| § | |
| Defendants. § | |

### DEFENDANTS' *DAUBERT* MOTION

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993), and its progeny, Defendants hereby move to exclude or limit the analysis offered by Plaintiff's expert, Dr. Allyn Needham.

### I.   SUMMARY OF ARGUMENT

This is an employment discrimination lawsuit arising from Eminent Medical Center LLC's (EMC) decision to terminate Robles for ongoing performance challenges. But instead of providing an opinion related to the damages from Robles's loss of employment, Dr. Needham provided an opinion related to Robles's lost earning capacity based on an alleged physical injury that she claims to have sustained as a patient – not an employee – of EMC. Robles has a pending medical malpractice action in state court against EMC (Ex. A), where causation and the nature and extent of her alleged injuries are at issue. Her lost earning capacity due to her alleged physical injury is irrelevant in this employment discrimination lawsuit, and the underlying employment discrimination claims on which Robles's claim is based do not allow for the recovery of such damages.

Further, Dr. Needham's report is unreliable and irrelevant because Robles found comparable employment, which cuts off any claim to lost wages. Under settled case law, this – as well as Robles's termination for cause from three subsequent employers in prompt succession – cuts off Ms. Robles's entitlement to lost wages. Dr. Needham's assessment of her "lost earning capacity" through retirement is useless for this additional reason as well.

Finally, Robles did not timely supplement the record with lost earnings information, which she testified she has in her possession, and Mr. Needham did not review any information regarding her subsequent earnings (at least not past July 2020). Robles's failure to timely supplement her discovery responses cannot be cured through a revised report from Dr. Needham. And his failure to evaluate the last several years of Robles's employment history renders his analysis unhelpful.

By using these and other flawed assumptions and skewed analyses, Dr. Needham's opinions result in a facially unsound result. His opinion is neither relevant nor reliable and he should be excluded as a witness.[1]

## II. RELEVANT FACTS FOR *DAUBERT* MOTION

Plaintiff brings claims under the Family and Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA) related to the termination of her employment. This is not a personal injury case.

Plaintiff's expert report is dated July 2020. (Ex. B). Plaintiff designated Dr. Needham as an expert witness on August 6, 2021. (Ex. C). Plaintiff answered written discovery requests on March 8, 2021, in which she relied entirely on Dr. Needham's report as her evidence of damages.

---

[1] Further, although supplementation will not fully cure these flaws, in the event Robles was allowed to supplement the record on an untimely basis and Dr. Needham were allowed to supplement his report, Defendant would request the alternative relief of additional time to take his deposition. Defense counsel has requested dates for his deposition promptly but any such deposition was pushed until after discovery by agreement. However, his deposition would be a waste of resources given the obvious and uncurable challenges with his opinions and report.

(Ex. D, Interrogatory 3). Plaintiff stated in her discovery responses that she would supplement. To date, there has been no such supplementation. Discovery is closed as of February 4, 2022.

Dr. Needham's report relies on the analysis of another expert witness, Dr. Snowden. Robles did not designate Dr. Snowden as an expert witness. Dr. Needham's report does not include Dr. Snowden's analysis.

### III.  LEGAL STANDARDS

Expert testimony is admissible only if it meets the standards set forth under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under these authorities, trial courts are charged with "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id*.  The overarching goal of this gate-keeping role is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Company v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Burleson v. Tex. Dept. of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004).  The *Daubert* analysis "appl[ies] to all species of expert testimony, whether based on scientific, technical, or other specialized knowledge." *Kumho*, 626 U.S. at 141; *see also United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003).   An appellate court reviews a trial court's ruling on the sufficient reliability of proffered testimony under Rule 702 and *Daubert* for an abuse of discretion only. *See Kumho Tire Co.,* 526 U.S. at 152; *Burleson,* 393 F.3d at 583.

In making this determination, the party offering the expert testimony bears the burden of showing that the expert's opinions are reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). To do so, the party offering the testimony must show that the expert's opinions are "supported by appropriate validation—*i.e.*, good grounds based on what is

known." *Daubert*, 509 U.S. at 590. In making this determination, the Court may consider among other things: "(1) whether the expert's theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and, (5) the degree to which the technique or theory has been generally accepted in the scientific community." *Id.* at 593-94. Other factors such as "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfound conclusion," may also be relevant to the determination of reliability. *See* Advisory Committee Note to FED.R.EVID. 702 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## IV.   LEGAL ARGUMENT

### a. Needham's opinion is unreliable and unhelpful because "lost earning capacity" from physical injury is not an appropriate measure of damages under the ADA and FMLA.

The second and third prongs of the Court's gatekeeping analysis are reliability and relevance. Dr. Needham (and by incorporation Dr. Snowden) have attempted to evaluate Ms. Robles's lost earning capacity through her retirement age and beyond based on her alleged injury – not the based on the loss of her job at EMC. This is not an appropriate measure of damages under the statutes at issue. Damages available under the ADA include injunctive relief, reinstatement (or front pay in lieu of reinstatement), back pay, compensatory damages, and attorney's fees and costs. 42 U.S.C. § 12117. Compensatory damages include, among other things, compensation for humiliation, pain, and suffering, and the like. 42 U.S.C. § 1981A(b)(3); *see also Report of the House Committee on Education and Labor on Civil Rights Reform Act of 1990*, H.R. Rep. No. 664, Part 1, 101st Cong., 2d Sess. at 75 (1990). Damages available under the FMLA include matters such as wages, salary and employment benefits, and in some cases liquidated damages. 29

U.S.C. § 107(a)(1)(A). Neither statute creates liability for, nor do they otherwise permit, the recovery of personal injury damages over the course of one's anticipated working life, yet that is exactly what Dr. Needham sets forth as Ms. Robles's period of loss. The introduction of such evidence finds no grounding under the statutes at issue and would be highly prejudicial. *See* FRE 702 & 403. At the very least, is it unreliable and irrelevant and should be excluded for that reason.[2] *See Edmonds v. Ill. Cent. Gulf R.R. Co.*, 910 F.2d 1284. 1287 (5th Cir. 1990) ("If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.").

> **b. Dr. Needham's opinion does not rest on sufficient facts or data because it does not consider Robles's termination for cause from three subsequent employers and comparable earnings, both of which cut off any entitlement to lost wages.**

Dr. Needham's opinion does not rest on sufficient facts or data as required by Rule 702 because it completely ignores Roble's actual subsequent employment. Back pay is intended to "redress the economic injury the plaintiff has suffered as a result of discrimination." *EEOC v. Joint Apprenticeship Comm. of the Joint Indus. Bd. of the Elec. Indus.*, 185 F.3d 110, 123 (2d Cir. 1998) (citation internal quotations omitted). A plaintiff who finds employment at a comparable or greater compensation has suffered no economic injury and is therefore not entitled to back pay. *See id.* (denying back pay when plaintiffs found higher paying employment). Similarly, a plaintiff that finds employment with at least the same or comparable salary has no entitlement to front pay. *See McKnight v. General Motors Corp.*, 973 F.3d 1366, 1372 (7th Cir. 1992) (plaintiff earning

---

[2] In an employment discrimination case, periods of inability to work cut off or suspend lost wages since that indicates a period of time where the claimant would have been out of the workforce, regardless of whether their employment had continued. *See e.g., Rivera v. NIBCO, Inc.*, 384 F.3d 822, 833 (9th Cir. 2004 (Bea, J., dissenting). In this case, by focusing on lost earning capacity based on Robles's alleged physical injury, her termination is irrelevant, since according to Dr. Needham her ability to work would have been the same had she remained employed at EMC or elsewhere. Hence the flaw in the premise of Dr. Needham's opinion. For this additional reason, the opinion is both unreliable and not helpful to the trier of fact.

considerably more money after termination was not entitled to front pay); *Starrett v. Wadley*, 876 F.2d 808, 824 (10th Cir. 1989).[3]

Here, Robles found another job that cuts off any entitlement to lost wages, back pay or front pay. For example, Robles was making $40.00/hour in a non-supervisory position when EMC terminated her employment ($83,200 annualized).[4] (Ex. I, Eminent/Robles 000017). But she obtained a job with Premier on in April 2020, as a manager making $90,000.00 annualized. (Ex. E, Plaintiff's Depo. at 34; Ex. E, Premier Records). This comparable work cuts off her lost earnings claim as of that date. *Joint Apprenticeship*, 185 F.3d at 123; *McKnight*, 973 F.2d 1366; *Wadley*, 876 F.2d 808. This information was in Robles's possession long before she filed her expert witness designation on August 6, 2021, using an expert report dated July 2020. Therefore Dr. Needham's projections of lost earning capacity until her retirement are demonstrably unsupported, irrelevant, and unreliable.

Additionally, Premier terminated Robles for cause on October 19, 2020, based on poor performance, absence/tardiness, violation company policies, and falsification of records, including time records. (Ex. E). Therefore, even though her wage claim cuts off on the date of her job offer from Premier, it does not start running again at the time of her termination because it was a termination for cause. *See Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936-37 (5th Cir. 1996). Because Dr. Needham projects losses based on Robles's supposed retirement age, and because he did not consider evidence of her termination for cause, his analysis of damages is unreliable and irrelevant.

---

[3] In this case, Robles was claims she was unable to work because of a surgery from the date of her termination through the spring (February or March) of 2020. (Plaintiff Depo. at 201-02). A plaintiff cannot recover employment discrimination damages for periods of inability to work. *See e.g., Rivera v. NIBCO, Inc.*, 384 F.3d 822, 833 (9th Cir. 2004 (Bea, J., dissenting). Dr. Needham's opinion does not account for this.

[4] Dr. Needham's report is also objectionable because it uses Robles's earning before her demotion, but the complaint only challenges her termination. Either way, her subsequent employment and/or repeated loss of work for performance related reasons cuts off any claim to lost wages.

Even if Robles's employment with and termination from Premier did not cut off her lost wages, it should be noted that she obtained an even better paying job on January 1, 2021, when she accepted a job offer from Horizon Medical Center earning $118,400 annualized, with the opportunity for additional bonus incentive. (Ex. G) Robles was likewise terminated from Horizon for an issue involving patient care. (Ex. E, Plaintiff's Depo. at 29, 83-84) Notably, the same pattern played out yet another time. Specifically, Robles obtained another job in January 2021, with PSN as a Clinical Operations Specialist earning $109,000.00 – again more than she earned at EMC – and was promptly terminated from that job shortly thereafter. (Ex. H). Simply put, under no circumstance would Robles be entitled to back pay or front pay through her retirement, as Dr. Needham opines. Because Dr. Needham projects his damages out based on Robles's supposed retirement age, his opinion is unreliable, irrelevant, and useless. *See Muñoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (expert must account for alternative explanations).

> **c. Dr. Needham's opinion does not rest on sufficient facts or data because it projects Robles's losses through retirement without accounting for her actual earnings since her termination from EMC, including subsequent employment, contract work, and self-employment.**

In addition to Dr. Needham ignoring Robles's actual subsequent employment history, his opinion does not rest on sufficient facts or data because he ignores other sources of income. For example, Robles testified that she worked on a contract basis for several healthcare providers and that she worked in her own business performing cosmetic injections. (Plaintiff's Depo. at 25-27, noting work on a contract basis including but not limited to Southlake Surgery, Epic Pain, and that she retains records of such work, and at 30-33 noting self-employment). But she has not supplemented the record with her income from these activities – despite admitting to maintaining such records – nor does Dr. Needham account for these sources of income. Indeed, Dr. Needham's report was created in July 2020, and it has not been supplemented at any time during the discovery

7

period (which was extended once by agreement). Robles relies on his report for her discovery responses, which she has not timely supplemented. *See* FRCP 26(a)(2)(A) & (E).

In short, Dr. Needham's report projects Robles's lost earnings capacity based on her retirement age based on physical injury – it does not address her actual lost earnings based on her termination and her actual subsequent earnings as developed (or not developed) by the record. Because Robles has not supplemented the record with complete information regarding her subsequent employment and earnings (and it is too late to do so), and because Dr. Needham's analysis has not been supplemented to account for Robles's actual work history after she left EMC, his entire analysis is unreliable and irrelevant. *See e.g., Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (noting that appropriate variables must be considered in expert analysis); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988) (noting expert opinion was "essentially worthless" based on failure to control for other variables); *see also U.S. v. Coutentos*, 651 F. 3d 809, 820 (8th Cir. 2011) (noting exclusion of expert who did not review any case specific information, rendering testimony fundamentally unsupported); *Junk v. Terminex Int'l Co.*, 628 F.3d 439, 448 (8th Cir. 2010) (noting analytical gap when expert relied on unfounded assumptions); *Claar v. Burlington N. R.R.*, 29 F.3d 499, 502 (9th Cir. 1994) (failure to account for alternative explanations).

Additionally, Dr. Needham's report relies on an expert opinion from Dr. Snowden, but Dr. Snowden was not timely designated as an expert witness in this case. For this additional reason, his opinion should be excluded.

## V.   CONCLUSION

Dr. Needham's report is unreliable and irrelevant because (1) the ADA and FMLA do not allow for the recovery of "lost earning capacity" due to reduced physical capacity; (2) it is settled

that comparable employment such as that Robles obtained after her termination from EMC cuts off lost wages, including back pay and front pay as does termination for cause; (3) Dr. Needham does not account for Ms. Robles's actual subsequent employment history, including income from various sources; (4) Robles failed to timely supplement her discovery responses and Dr. Needham's report with respect to her subsequent earnings; and (5) Dr. Needham's report relies on Dr. Snowden's opinion, and Dr. Snowden has not been designated as an expert witness in this case. Accordingly, Dr. Needham's claimed damages analysis should be struck in its entirety.

Respectfully submitted,

By: */s/ Kristin L. Bauer*
Kristin L. Bauer
State Bar No. 24006813
Kristin.Bauer@jacksonlewis.com
David A. Scott
State Bar No. 17894515
David.Scott@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas 75201
PH: (214) 520-2400
FX: (214) 520-2008

AND

By: */s/ Michael S. Alfred*
Michael S. Alfred
State Bar No. 24014416
malfred@hallettperrin.com
HALLET & PERRIN, PC
1445 Ross Avenue
Suite 2400
Dallas, Texas 75202
Telephone: (214) 853-0053
Fax: (214) 922-4142

**ATTORNEYS FOR DEFENDANTS**

9

## CERTIFICATE OF SERVICE

      On February 22, 2022, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically, as authorized by Federal Rule of Civil Procedure 5(b)(2), including the following:

      Robert E. Goodman, Jr.
      KILGORE & KILGORE, PLLC
      3109 Carlisle Street
      Dallas, Texas 75204
      EM: reg@kilgorelaw.com

      */s/ David A. Scott*
      David A. Scott